# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

SCOTT TERRILL HOLDEMAN

       Plaintiff,

      v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

       Defendants.

Case No. 20-cv-729-NKL

## ORDER

      Scott Holdeman appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability insurance benefits under Title II and Title XVI of the Social Security Act. Doc. 1 (Social Security Complaint); Doc. 13 (Holdeman's Social Security Brief). Holdeman argues this case should be remanded because the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence or based upon correct legal standards. For the reason stated below, the decision of the ALJ is remanded for further development of the record.

## I.    BACKGROUND

      On May 13, 2016, Holdeman filed a Title II application for disability and disability insurance benefits and a Title XVI application for supplemental security income. Transcript ("Tr.") 200-10.[1] Holdeman alleged his disability began December 27, 2015. *Id.* On January 17, 2018, Holdeman had a hearing with an ALJ, and on March 6, 2018, the ALJ issued a decision

---

[1] The Transcript can be found at docket entry 11.

denying Holdeman's claims. Tr. 16-28. On September 17, 2018, the Appeals Council declined to review the initial decision. Tr. 1-6. Holdeman then appealed to this Court, which remanded the case for further proceedings. Tr. 1057-71. On January 16, 2019, the same ALJ held an additional hearing. Tr. 996-1025. The ALJ then partially granted the application, finding that Holdeman was disabled as of September 26, 2019, but not earlier. Tr. 969-87. Holdeman has now appealed the decision that Holdeman was not disabled prior to September 26, 2019.

### A   Medical History

For the fifteen years prior to the alleged onset of his disability, Holdeman has either been a plumber or supervised plumbers. Tr. 1013-16. During his career, he has suffered a series of job-related injuries. On October 23, 1990, he was struck by plywood that fell out of a truck. Tr. 380-82. This incident caused deep bruises and abrasions but not serious injury. Tr. 382. On October 30, 1992, Holdeman cut his hand on a razor blade while decaling a vehicle. Tr. 383. On September 15, 1994, he felt a sudden pain in his back after trying to pick up a 40lb bag of bolts. Tr. 385. This caused a chronic lumbar strain. Tr. 385-87. On December 10, 2008, he was standing on a pump when he slipped and fell. Tr. 456. This caused tears in his biceps and labrum and an impingement of his right shoulder. Tr. 458-59. He had right shoulder surgery, and on June 3, 2009, was released to work without limitation. Tr. 462-64. Holdeman has had multiple unrelated knee surgeries. Tr. 456, 827.

On June 18, 2000, Holdeman suffered a knife wound to his hand. Tr. 911. He had surgery to repair an injured nerve. Tr. 911-15. On March 28, 2013, he fractured his wrist in a motorcycle accident. Tr. 518.

On December 26, 2015, Holdeman was lifting a 300 lb "heat exchanger" while on a ladder when his back gave way and bent backward. Tr. 660. He states this caused significant spasms

and immediate pain in his lower back that radiated down his right thigh. *Id*. He was diagnosed with lumbar strain, degenerative lumbar disc disease, and broad-based disc bulge. Tr. 569-70, 666. During January and February of 2016, Holdeman attended physical therapy. Tr. 581-88, 645-57. Holdeman filed a workers' compensation claim based on this workplace injury. Tr. 826. He was cleared to return to full duty work on March 24, 2016. Tr. 609.

As a result of this incident, and his previous injuries, Holdeman claims he is unable to bend over, sit for more than thirty minutes, or reach above his head for more than thirty to forty-five seconds at a time. Tr. 73, 1007-08, 1010. He also complains of difficulties with his hands due to his past injuries and surgeries. Specifically, he claims he will drop dishes due to lack of grip strength, cannot put his own boots on, cannot button buttons or zip zippers, and has difficulty holding small objects or typing because his fingers lock up after being used for a few minutes. Tr. 69, 75-76, 1009.

Additionally, Holdeman was diagnosed with lupus in December of 2015. Tr. 336-39. Holdeman claims that his lupus slows him down and causes him to take naps throughout the day. Tr. 74. He also claims it causes him to vomit when eating, drinking, encountering bad smells, or for no reason at all. Tr. 70-71, 74. He claims he lost 47 pounds due to his vomiting. Tr. 71 (stating he used to weigh 208 pounds and now weighs 161 pounds).

In his functional report, a questionnaire filled out at the request of the Missouri Social Security Administration, Holdeman claims that he can struggle in social settings due to his anxiety. Tr. 269. He testified that he sometimes struggles to get along with coworkers and once fired 23 people in a week. Tr. 76-77. Additionally, testing indicates he has cognitive and emotional impairments. Tr. 319-320 (Test showing he was in the bottom 22% of participants in the ability to learn instructions); Tr. 831-32 (Variety of tests showed he experienced more distress than

3

average; and was below the average range in his general intellectual ability).

## B   Case History

### 1.   Initial Decision

Pursuant to the Social Security Act, the Social Security Administration follows a five-step sequential evaluation process when determining disability. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (citing 20 C.F.R. § 416.920).  First, an ALJ considers whether the claimant is doing any substantial gainful activity—defined as work activity that is both substantial and gainful.  Tr. 975.  Second, the ALJ determines whether the claimant has severe impairments. *Eichelberger*, 390 F.3d at 590 (citing 20 C.F.R. § 416.920).  Third, the ALJ determines whether the claimant's impairments meet the criteria of any Social Security Income listings. *Id*.

Fourth, the ALJ determines whether the impairment prevents the claimant from performing past relevant work. *Id*.  Fifth, the ALJ determines whether the impairments necessarily prevent the claimant from doing any other work that exists in significant numbers in the national economy. *Id*.  Before making the last two determinations, the ALJ must determine the claimant's residual function capacity ("RFC"). *Id*. at 591.  The RFC is the "most the claimant can still do despite her limitations."  20 C.F.R. 404.1545(a)(10).

At the initial hearing, the ALJ determined that Holdeman had not performed substantial gainful activity since December 27, 2015.  Tr. 22.  He also determined that Holdeman had multiple severe impairments, but that none of Holdeman's impairments met or medically equaled the severity of one of the listed impairments. *Id*.  The ALJ found that Holdeman's physical and mental impairments precluded him from doing his past work as a plumber.  Tr. 26.  However, the ALJ determined that Holdeman was not disabled because there were jobs that existed in significant numbers in the national economy that someone with Holdeman's age, education, work experience,

4

and RFC could perform. Tr. 27 (listing addresser, document preparer, and surveillance system monitor as jobs Holdeman could perform).

### 2. Remand

Previously, Holdeman appealed the administrative determination to this Court. On appeal, this Court remanded the case after determining that the jobs the Vocational Expert ("VE") proposed that the ALJ stated Holdeman could perform could not be performed by someone with Holdeman's RFC and the VE failed to explain why Holdeman could perform those jobs when the DOT's description of the jobs conflicted with the RFC. Tr. 1057-70. The Court remanded to the ALJ to resolve the conflict between the VE's testimony and the claimant's RFC. The Court did not determine if the RFC was adequate but instructed the ALJ to consider Holdeman's concerns with his RFC on remand. Tr. 1070.

### 3. Second Decision

The ALJ's second decision was nearly identical to the first. The ALJ determined that Holdeman had not engaged in substantial gainful activity since December 27, 2015—the alleged onset date of his disability. Tr. 974, 977.

The ALJ then determined that Holdeman had the following severe impairments: degenerative joint disease of the bilateral knees, degenerative joint disease in the right shoulder, history of bilateral carpal tunnel syndrome, lupus erythematosus, mild degenerative disc disease of the lumbar spine, alcohol abuse, depression, anxiety, somatic symptom disorder, umbilical hernia, and posttraumatic stress disorder. Tr. 977.

At step three, the ALJ determined that Holdeman did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 977.

The ALJ determined that Holdeman had the RFC to:

[L]ift and carry five pounds frequently and ten pounds occasionally. In an eight-hour workday with normal breaks, he can sit for about six hours, and he can stand and/or walk for about two hours. He requires a cane to ambulate. He should never climb ladders, ropes, or scaffolds. He should never work at unprotected heights or around dangerous machinery. He should not work around extreme vibration. He can occasionally stoop, kneel, crouch, crawl, and climb ramp or stairs. He can reach overhead occasionally bilaterally. He can frequently, but not continuously, handle and finger bilaterally. He should not power grip or twist bilaterally. He can follow simple instructions and perform simple repetitive task in work that involves only occasional interaction with the public and occasional interaction with co-workers. Tr. 979.

When formulating the RFC, the ALJ stated he considered "all of the records when assessing the claimant's residual functional capacity," including "opinion evidence". Tr. 977, 979. The ALJ determined that he believed Holdeman's impairments could cause his alleged symptoms, but he doubted the severity of the symptoms because the objective findings were not extreme, Holdeman was receiving little continuing treatment, and his daily activities indicated he was not severely impaired. Tr. 978, 980-81. As a result of Holdeman's RFC, the ALJ determined Holdeman was unable to perform his past relevant work as a plumber. Tr. 985. The ALJ determined that prior to September 26, 2019 (when the claimant turned 50), Holdeman was not disabled because someone with his age, education, work experience, and RFC could perform jobs that existed in the national economy. Tr. 985-86. The VE listed different jobs than during the first hearing and the ALJ found Holdeman could be an assembler, a stuffer, or a table worker. Tr. 986. The ALJ also found that after September 26, 2019, Holdeman's age category changed, and he was now disabled under Medical Vocational Rule 201.14. Holdeman appeals the determination that he was not disabled between his onset date, December 27, 2015, and September 26, 2019.

## II. LEGAL STANDARD

"The Court must affirm the Commissioner's denial of social security benefits so long as 'there was no legal error' and 'the findings of fact are supported by substantial evidence on the record as a whole.'" *Alhilfy v. Saul*, No. 4:20-CV-00235-NKL, 2021 WL 462122, at *2 (W.D.

Mo. Feb. 9, 2021) (quoting *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016)). "'Substantial evidence' is less than a preponderance of evidence but enough that a reasonable mind could find the evidence adequate to support the ALJ's conclusion." *Id.* (citing *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015)). The Court must consider evidence that both supports and detracts from the ALJ's decision. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). And this Court should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citing *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)).

## III.    DISCUSSION

### A   Whether the RFC is Sufficiently Supported

Holdeman argues that the ALJ's RFC is not supported by substantial evidence because the ALJ: improperly discredited opinion evidence; failed to incorporate limitations into the RFC from opinions he afforded some weight; failed to account for the effect of impairments he found severe; determined the RFC based on his own understanding of the medical record; and failed to develop the record. The Court considers these arguments in turn.

#### 1.   Whether the ALJ Properly Weighed and Applied the Opinion Evidence

##### a.  Michael Dreiling

Holdeman argues that the RFC is not substantially supported because the ALJ's opinion is "silent as to Dreiling's opinion and findings." [2] Doc. 13 at 25. Dreiling is a vocational consultant who evaluated Holdeman as part of Holdeman's workers' compensation claim. Tr. 306-320.

_____

[2] Holdeman also argues that the ALJ failed to consider Dreiling's report. The Court does not need to decide whether the ALJ considered Dreiling's opinion because even if he did consider the opinion, he is required to discuss it for the reasons stated below. Since the ALJ will be required to discuss Dreiling's opinion on remand, he necessarily will be required to consider it.

Dreiling reviewed Holdeman's medical records, analyzed Holdeman's work history and gave Holdeman a cognitive assessment known as the Wonderlic test. *Id.* Dreiling concluded that Holdeman did not have the capacity to perform substantial gainful employment and it was not realistic to expect an employer to hire Holdeman. Tr. 320.

The Commissioner argues that the ALJ was not required to discuss Dreiling's opinion because Dreiling only reviewed medical records and opinions that the ALJ had already considered. An ALJ is not required to discuss every piece of evidence in the record. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). However, the ALJ must make a logical bridge between the evidence and the RFC by "includ[ing] a narrative discussion describing how the evidence supports each conclusion", and "[t]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7; *see also Lewis v. Colvin*, No. 3:14-CV-05001-NKL, 2014 WL 5454211, at *5 (W.D. Mo. Oct. 24, 2014) (upholding an ALJ's decision because it provided a "clear bridge between the substance of the RFC and the medical records").

The ALJ was required to discuss Dreiling's opinion because his opinion created a material inconsistency in the record that the ALJ did not resolve. Contrary to the Commissioner's argument, Dreiling's report included an objective test he performed of Holdeman's cognitive abilities—known as the Wonderlic test—which was not discussed in any other part of the record. Tr. 317-20. That testing showed Holdeman was in the bottom 22% of adults in cognitive ability. Tr. 319. Additionally, the test showed Holdeman needed ample time to learn a limited number of steps for routinized jobs; that he would have trouble adapting to changes on the job; that he would need to be "explicitly taught" what he needed to learn, and that he would not benefit from "book learning" training. Tr. 319. All but one of these cognitive deficiencies are not accounted for in

the RFC, which limits Holdeman to following simple instructions and performing simple tasks but says nothing about Holdeman's ability to adapt to changes; his need for additional time for training; or his need to be explicitly taught.[3]   The ALJ's failure to explain the material inconsistency between the Wonderlic results and the lack of limitations in the RFC violates SSR 96-8p's command.  *See Carter v. Sullivan*, 909 F.2d 1201, 1202 (8th Cir. 1990) ("This court has previously held that an agency's failure to follow its own binding regulations is a reversible abuse of discretion.") (collecting sources).

The case must be remanded so that the ALJ can either add additional restrictions to Holdeman's RFC or explain why he discredited the Wonderlic results and Dreiling's opinion.[4] *See Molina v. Colvin*, No. 15-2325-SAC, 2016 WL 1030040, at *4 (D. Kan. Mar. 10, 2016) (remanding the case because "the ALJ completely ignored the report by the vocational consultant," noting that "[t]he ALJ had a duty to consider these reports, and to indicate what weight the ALJ accorded to these opinions.").

### b. Dr. Koprivica

Holdeman also argues the RFC is not supported by substantial evidence because the ALJ improperly gave Dr. Koprivica's opinion "little weight".  Dr. Koprivica evaluated Holdeman as part of Holdeman's workers' compensation claim.  Dr. Koprivica reviewed Holdeman's medical records and gave him a physical exam. Tr. 750-51.  He stated that Holdeman's preexisting injuries, combined with the December 27, 2015, injury to "result in a potentially overwhelming disability

---

[3] Holdeman's limitation in the ability to "book learn" is accounted for by the RFC which limits Holdeman to performing simple tasks and following simple instructions. Tr. 979.  By limiting Holdeman to following simple instructions, the RFC ensures any materials Holdeman is required to follow will be short and not require "book learning".

[4] The Commissioner argues that it had no duty to agree with Dreiling's findings.  While that is true, that does not mean he had the right to disregard Dreiling's findings without explanation.

situation." Tr. 767-69. Furthermore, he opined that Holdeman would need a plethora of restrictions that are not in the RFC, including precluding Holdeman from frequent or constant bending at the waist and requiring that Holdeman be allowed to change from sitting to standing or walking as needed.

The ALJ gave Dr. Koprivica's opinion "little weight" because: (1) Dr. Koprivica only evaluated Holdeman once; (2) Dr. Koprivica examined Holdeman for workers' compensation purposes; (3) the "specific limitations" in Dr. Koprivica's opinion were "not supported by the medical evidence or the above found residual functional capacity"; and (4) other medical opinions suggested minimal limitations. Tr. 984.

Holdeman argues that the ALJ cannot discredit Dr. Koprivica's opinion because he only examined Holdeman once because the ALJ gave Dr. Smith's opinion "some weight," and Dr. Smith never examined Holdeman. The ALJ must be consistent with how he treats opinion evidence. *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004) (stating the ALJ may not "pick and chose only evidence in the record buttressing his conclusion"); *Murphy v. Berryhill*, 2018 WL 6610287, at *4 (N.D. Ill. Nov. 28, 2018) ("[I]t is important that ALJs employ the 'same metrics' and the 'same level of rigor' in evaluating multiple opinions"). The ALJ explicitly gave Dr. Smith's opinion less weight because he never examined Holdeman. Tr. 984. However, he still gave that opinion "some weight". Tr. 983. Thus, the ALJ was allowed to give Dr. Koprivica's opinion less weight because he only examined Holdeman once, but he could not give the opinion "little weight" on this basis alone.

Holdeman also argues that it was improper for the ALJ to discredit Dr. Koprivica's opinion because it was prepared for workers' compensation purposes while affording Dr. Santos' opinion "some weight," although it too was prepared for workers' compensation purposes. As stated

above, the ALJ must be consistent when dealing with opinion evidence. And it was an error to treat Dr. Koprivica's opinion differently than Dr. Santos. However, that does not mean the ALJ was precluded from limiting the opinion of Dr. Koprivica. Rather, the ALJ should have either discredited both opinions or discredited neither depending on whether it is valid for an ALJ to discredit an opinion because it was prepared for workers' compensation purposes.

The Commissioner argues, and Holdeman concedes, that it was proper to discredit the portions of Dr. Koprivica's opinion that assigned disability percentages to Holdeman's impairments because Social Security Regulations use a different definition of disability and do not utilize percentage rankings. However, Holdeman contends that specific limitations in a workers' compensation opinion should not automatically be discredited. An ALJ may consider an examination or opinion that was part of a claimant's workers' compensation claim. *See Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) ("Although Dr. Yellin's examination was performed in connection with a workers' compensation claim, the ALJ was entitled to consider this opinion in relation to Prosch's social security claim.") (citation omitted). Here Dr. Koprivica opined that Holdeman should be allowed to: adjust from standing to sitting at will; that he should be precluded from frequent bending at the waste; and other limitations. Tr. 784. There is no reason to discredit these opinions merely because they were made when Holdeman was applying for a different program because they relate to Holdeman's ability to function in the workplace, not any specific standard to obtain benefits. *See Malcinovic v. Colvin*, No. C14-2068, 2015 WL 3885978, at *11 (N.D. Iowa June 23, 2015) ("Dr. Delbridge consistently found Malcinovic to have significant limitations . . . . Simply because these opinions were used in a workers' compensation claim does not distract from their worth as opinions from a long-time treating source."). Thus, it was an error

for the ALJ to discredit the specific limitations in Holdeman's opinion because the opinion was prepared for workers' compensation purposes.

The ALJ also discredited Dr. Koprivica's opinion because the "specific limitations are not supported by the medical evidence or the above found residual functional capacity." Tr. 984. The ALJ erred in stating that the RFC did not support the limitations found by Dr. Koprivica because the RFC is supposed to be based on medical evidence, not the other way around. *See* 96-8p, 1996 WL 374184, at *5 (stating the RFC is based on all of the relevant evidence including medical opinions).

Additionally, Holdeman argues it was improper to discredit Dr. Koprivica's opinion because it was inconsistent with the medical evidence, because the ALJ did not identify which medical evidence was inconsistent with Dr. Koprivica's opinion. The Commissioner argues that the ALJ's decision to discredit Dr. Koprivica's opinion is supported by substantial evidence because other medical opinions stated Holdeman needed less severe restrictions than Dr. Kopirivia said were necessary. But the ALJ did not cite to this evidence in his opinion. And the Commissioner cannot rely on post hoc justifications for its decision. *May v. Astrue*, No. 09-CV-03480-NKL, 2010 WL 3257848, at *9 (W.D. Mo. Aug. 16, 2010) ("The Commissioner's post hoc analysis of the medical records in this case is insufficient when none of these reasons were provided in the ALJ's opinion."); *Frazier v. Astrue*, No. 10-03315-CV-S-DGK, 2011 WL 3510993, at *3 (W.D. Mo. Aug. 10, 2011) ("[I]t is well established that the Court should review the actual basis for the ALJ's decision, not 'post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.'" (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir.2005))).

Since the ALJ failed to identify which evidence in the record is inconsistent with Dr. Koprivica's opinion the Court cannot determine if the ALJ's decision to discredit Dr. Koprivica's opinion was supported by substantial evidence because the Court has no way of knowing which evidence to review. *Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011); *Langley v. Barnhart*, 373 F. 3d 1116, 1123 (10th Cir. 2004). Consequently, remand is necessary. *See Brown v. Colvin,* 825 F.3d 936, 940 (8th Cir. 2016) (remanding the ALJ's decision because the ALJ's conclusory reasoning prevented the Court from determining if the decision was supported by substantial evidence).

Lastly, the ALJ justified its decision to give Dr. Koprivica's opinion less weight because "As noted above, other medical opinion evidence suggests minimal limitation and release to full duty work in March 2016." Tr. 984 (citing Dr. Santos' opinion). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). And the Court will not disturb the ALJ's decision if it is "supported by good reasons and substantial evidence." *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015) (quoting *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir.2003)). The ALJ's decision to credit Dr. Santos' opinion was supported by neither. The ALJ simply points out that other opinions disagree with Dr. Koprivica's. He does not explain why those opinions are valid and Dr. Koprivica's are not. As a result, his decision to discredit Dr. Koprivica's opinion merely because it is contradicted Dr. Santos's opinion is not supported by substantial evidence. *See Noerper v. Saul,* 964 F.3d 738, 747 (8th Cir. 2020) (stating remand is appropriate when the record "presents conflicting medical opinions" and "the Commissioner fails to explain [their] choice").

On remand the ALJ must either adopt Dr. Koprivica's opinion or: identify the evidence in the record that contradicts Dr. Koprivica's opinion; explain why Dr. Santos' opinion should be

given more weight than Dr. Koprivica's; and reassess the weight given to Dr. Koprivica's opinion without discrediting the opinion because it was originally given for workers' compensation purposes.

### c. Dr. Dorzab

Plaintiff argues the ALJ's decision to give Dr. Dorzab's opinion "little weight" was not supported by substantial evidence. Dr. Dorzab was one of Holdeman's treating physicians who treated Holdeman at least six times between January 6, 2015, and November 2, 2016. Tr. 739-41, 922-34. On November 2, 2016, she filled out an RFC assessment form that stated, among other things, that Holdeman could only sit for two hours in an eight-hour day, was incapable of using his hands, had debilitating pain, and was not a suitable candidate for work. Tr. 818-20.

A treating physician's opinion is "normally entitled to great weight." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (citing *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010)). However, such an opinion "do[es] not automatically control, since the record must be evaluated as a whole." *Bentley v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995) (citation omitted). [5]

The ALJ gave Dr. Dorzab's opinion "little weight" because: she only treated Holdeman a handful of times; her opinions were inconsistent with her treatment notes; and her opinions appear to be based on Holdeman's subjective complaints.

Holdeman argues that Dr. Dorzab's opinion cannot be discredited due to a lack of visits with Holdeman since he gave Dr. Smith's opinion, who never examined Holdeman, "some weight." As explained above, the ALJ was allowed to give Dr. Dorzab's opinion less weight

---

[5] Under the new regulations, treating physician opinions are not entitled to special weight; however, this claim was filed before the change in regulations and the old regulations apply. 20 C.F.R. § 404.1527 ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

because he only examined Holdeman once, but he could not give the opinion "little weight" on this basis alone. *See supra* Section III.A.1.b.

Holdeman next argues that the ALJ was wrong to conclude that Dr. Dorzab's opinion contradicted her treatment notes and that Dr. Dorzab primarily relied on Holdeman's subjective complaints because Dr. Dorzab made objective findings regarding Holdeman's injury that supported her opinions and subjective complaints are an important diagnostic tool. An ALJ is permitted to give a treating physician's opinion less weight when it is based primarily on a claimant's subjective complaints. *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) ("The [Commissioner] was entitled to give less weight to Dr. [Allen's] opinion, because it was based largely on [Cline's] subjective complaints rather than on objective medical evidence,") (alteration in original). In the same vein, a treating physician's opinion is entitled to less weight when it is not supported by the physician's treating notes or assessments. *Id*; *see also Reece v. Colvin,* 834 F.3d 904, 909 (8th Cir. 2016) (affirming the ALJ's decision to discredit opinion when it was contradicted by tests that were run and treatment notes).

The record shows Holdeman complained of pain on the day of the report. Tr. 922. Dr. Dorzab stated that she believed Holdeman's complaints of pain on her RFC assessment form. Tr. 819. Dr. Dorzab also noted that she believed there was objective evidence that Holdeman's complaints were honest. Tr. 819. Specifically, she pointed to Holdeman's limping, favoring his right side, squirming in pain, shifting weight frequently, and grimacing when going from sitting to standing. Tr. 819. However, Dr. Dorzab's treatment notes from the day she gave her opinion state

there is only "Mild swelling of knees; bilateral crepitus; limping favoring left leg; slight swelling of ankle without increased warmth or redness; and a steady gait."  Tr. 922-23.[6]

Based on this record, the ALJ's decision that Dr. Dorzab's finding of debilitating pain was based primarily on subjective reports is supported by substantial evidence.  It was reasonable for the ALJ to conclude that Dr. Dorzab's opinion that Holdeman's pain is "debilitating" was inconsistent with the contemporaneous observations in her treatment notes that his gait was steady and that there was only mild swelling and no warmth or redness in his joints.  Since the opinion contradicted Dr. Dorzab's contemporaneous assessment, it was reasonable for the ALJ to conclude that Dr. Dorzab's opinion was based primarily on Holdeman's subjective complaints and not her objective observations.

Holdeman argues that the ALJ's decision to discredit Dr. Dorzab's opinion was not supported by substantial evidence because the examinations of other doctors support her findings.  But a claimant has not shown that the ALJ's conclusion was not supported by substantial evidence merely because there is substantial evidence that would support the opposite conclusion.  And Holdeman has failed to show that the ALJ's decision to discredit Dr. Dorzab's opinion was not supported by substantial evidence.

### d.  Dr. Smith

Holdeman argues the RFC is not supported by substantial evidence because it does not include limitations from Dr. Smith's opinion even though the ALJ afforded Dr. Smith's opinion "some weight."  The Commissioner counters that it was not required to adopt all the limitations in

---

[6] The ALJ also cited to imaging of the knee to support this argument.  Tr. 984 (citing Exhibits 6F/1 and 7F/8).  However, that imaging was done years before Dr. Dorzab completed her RFC assessment form and was completed by a different doctor.  Tr. 499; 507.  Consequently, it cannot be used to support the ALJ's argument that Dr. Dorzab's treatment notes contradicted her RFC assessment form.

Dr. Smith's opinion. Dr. Smith is a state medical agency consultant who reviewed Holdeman's medical records and completed an RFC assessment. Dr. Smith opined that Holdeman could only occasionally balance and had a plethora of environmental limitations. Tr. 96-97. Specifically, Dr. Smith opined that Holdeman should avoid even moderate exposure to hazards and concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dust, gases, and poor ventilation.[7]

The ALJ gave this opinion "some weight" because Dr. Smith has program knowledge, his opinion is supported by the objective medical evidence, and his opinion is somewhat consistent with the record as a whole. Tr. 983-84. But the ALJ ultimately determined Holdeman required greater physical limitations than Dr. Smith opined were necessary. Tr. 984. Even though the ALJ found Dr. Smith's opinion was not restrictive enough, the ALJ did not incorporate the environmental limitations into the RFC. Tr. 979.

Holdeman argues that the ALJ violated SSR 96-8p because it did not explain why the RFC deviated from Dr. Smith's medical opinion. SSR 96-8p states an ALJ's RFC assessment "must always consider and address medical source opinions." *See* SSR 96-8p, 1996 WL 374184, at *7. If the RFC assessment conflicts with an opinion from a medical source, then the adjudicator must explain why the opinion was not adopted. *Id.* And if the RFC deviated from a medical opinion without explanation, then remand is required. *See McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) (remanding for clarification when ALJ failed to explain why the RFC deviated from a medical opinion); *Carter v. Sullivan*, 909 F.2d 1201, 1202 (8th Cir. 1990) ("This court has previously held that an agency's failure to follow its own binding regulations is a reversible abuse of discretion."); *Alhilfy v. Saul*, No. 4:20-CV-00235-NKL, 2021 WL 462122, at *4 (W.D. Mo. Feb.

---

[7] Dr. Smith suggested other restrictions, but they are not relevant to the motion.

9, 2021) (remanding case when ALJ gave opinion some weight but did not adopt its limitation without explanation).

However, the ALJ provided no such explanation. While the ALJ gave general reasons for crediting and discrediting Dr. Smith's opinion; he provided no reason why specific limitations should or should not be adopted. Indeed, to the contrary, the ALJ stated that Dr. Smith's opinion did not go far enough, and additional limitations were needed. Tr. 984. Thus, the ALJ's RFC deviated from a medical opinion without an explanation in violation of 96-8p. *Id.*; *Porter v. Berryhill*, No. 4:17-CV-00072-NKL, 2018 WL 1183400, at *12-13 (W.D. Mo. Mar. 7, 2018) (remanding case where the ALJ afforded a medical opinion "some weight" but offered no explanation as to why only certain limitations were incorporated in the RFC).

The Commissioner argues that the ALJ did justify this deviation because he stated he was only adopting the portions of the opinion that were consistent with the record. But no such explanation was given in the ALJ's opinion, *see* Tr. 983-84, and the Commissioner cannot escape SSR 96-8p's requirement with *post hoc* justifications. *May*, 2010 WL 3257848, at *9; *Frazier*, 2011 WL 3510993, at *3.

Additionally, the Commissioner argues this was harmless error since none of the jobs the VE said Holdeman could perform would be impacted by the unadopted limitations from Dr. Smith's opinion. Since the Court is already remanding this matter to the ALJ, the Court will not evaluate whether this is harmless error because all errors should be fixed on remand.

### e. Dr. Jackson

Holdeman argues the ALJ's decision to assign Dr. Jackson's opinion little weight was not supported by substantial evidence. Dr. Jackson is a psychologist who evaluated Holdeman as part of his workers' compensation claim. Dr. Jackson made objective observations of Holdeman's

demeanor; studied his medical records; and diagnosed Holdeman with anxiety, depression, and Somatic Symptom disorder. He opined that Holdeman had moderate impairments in his social functioning and marked impairments in his ability to adapt. Tr. 840. Additionally, he found "When taking into account Mr. Holdeman's age, physical and psychological disabilities, Somatic Symptoms Disorder, pain type, persistent, moderate Major Depressive disorder, recurrent and Alcohol Use disorder, and the knowledge and job skills he possesses, I do not think that he has the psychological stability to access or compete in the labor market in any capacity. He is an individual contributor, and he lacks the interpersonal skills and abilities to work in team environments or when interfacing with the public." Tr. 842.

The ALJ gave Dr. Jackson's opinion "little weight" because his testimony was outside his area of expertise; he examined Holdeman for workers' compensation purposes; he only examined Holdeman once; his opinions were not supported by the RFC or the medical evidence; and his opinion was internally inconsistent. Tr. 984. Holdeman argues the ALJ erred in determining Dr. Jackson's opinion was outside his expertise as a psychologist because Dr. Jackson opined that Holdeman's mental impairments manifest in physical symptoms. *See* Tr. 832 (stating Holdeman's depression is a reaction to his physical condition); Tr. 834 (stating patients with Holdeman's psychological problems tend to convert their psychological disabilities into medical problems.").

However, the knowledge that a mental condition causes physical symptoms does not give Dr. Jackson the expertise to opine on how those physical problems impacted Holdeman's ability to work. Additionally, Dr. Jackson went beyond psychological evaluation because he analyzed evidence of Holdeman's physical injuries. *See* Tr. 823 (showing Jackson reviewed MRI scans of Holdeman's left knee and spine); Tr. 830-31 (showing Jackson evaluated the physical findings of other opinion providers). He then opined that when you combined Holdeman's physical and

psychological disabilities he is "permanently and totally disabled." Tr. 842. This necessarily entails analysis of the impact of Holdeman's physical impairments on his ability to work, which is outside of Dr. Jackson's area of expertise as a psychologist. Consequently, his opinion is entitled to less weight. *See Brosnahan v. Barnhart*, 336 F.3d 671, 676 (8th Cir. 2003) (holding the ALJ properly discounted consulting psychologist's opinion because it was based partly on considerations of physical impairments, an area outside the psychologist's expertise).

Holdeman also argues that Dr. Jackson's opinion is not internally inconsistent because a statement that Holdeman is totally disabled when you combine his physical and mental impairments is consistent with Dr. Jackson's statements that Holdeman is moderately limited in his ability to interact with others.

Dr. Jackson's opinion is internally inconsistent. Dr. Jackson stated, "I do not think [Holdeman] has the psychological stability to access or compete in the labor market in any capacity" and "[Holdeman] lacks the interpersonal skills and abilities to work in team environments or when interfacing with the public." Tr. 842. These statements are inconsistent with Dr. Jackson's earlier determination that Holdeman only had moderate limitations—defined as impairment levels being compatible with some, but not all, useful functioning, Tr. 840—in his social interactions. Thus, the ALJ's decision to discredit Dr. Jackson's opinion regarding Holdeman's mental impairments because they are internally inconsistent is supported by substantial evidence. *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) ("Physician opinions that are internally inconsistent, however, are entitled to less deference than they would receive in the absence of inconsistencies") (citation omitted).

Additionally, the ALJ explained he was discrediting Dr. Jackson's opinion because he only evaluated Holdeman once. While this alone would have been insufficient to discredit Dr.

Jackson's opinion, it is a legitimate reason to give an opinion less weight. *See supra* Section III.A.1.b. Additionally, the Commissioner correctly did not credit Dr. Jackson's disability determination because that determination is reserved to the commissioner. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("A medical source opinion that an applicant is 'disabled' or 'unable to work,' however, involves an issue reserved for the Commissioner.").

Thus, the ALJ's decision to give Jackson's opinion little weight was supported by substantial evidence.

### 2. Whether the RFC Accounted for Holdeman's Limitations

#### a. Interactions With Supervisors

Holdeman argues that the ALJ committed reversible error when he limited the ALJ's interaction with coworkers and the public but did not limit Holdeman's interaction with supervisors because there is no way to determine how the ALJ made this decision. The Commissioner did not address this argument.

Holdeman's RFC limited him to occasional interaction with the public and his coworkers. When addressing Holdeman's social limitations the ALJ stated:

> In interacting with others, the claimant had no more than a moderate limitation before the established onset date. As noted above, he reports shopping (Exhibit 4E). He also reports he gets along "good" with authority figures (Exhibit 4E/7). Furthermore, he has interacted appropriately with medical professionals, consultative/independent medical examiners, and the undersigned during the hearings. The claimant's ability to interact appropriately in unpredictable social situations and around unfamiliar people indicates he had no more than a moderate limitation interacting with others before the established onset date. Tr. 978.

This discussion is silent as to why the above evidence indicates that Holdeman can only occasionally interact with his coworkers and the public but has no limitations on his ability to interact with supervisors. The ALJ cites to answers from Holdeman's functional questionnaire where he states that he is "good" at getting along with authority figures. However, the ALJ also

cites to Holdeman's shopping and his interactions with different strangers throughout the adjudication of his claim to show that he can both work with others and interact with the general public. Despite citing to evidence that indicates Holdeman can interact with a supervisor, coworker or the general public, the ALJ only added limitations into the RFC for the latter two.

This is material inconsistency in the ALJ's decision that the ALJ was required to resolve. *See supra* Section III.A.1.a. But the ALJ has given no indication why it has decided a functional questionnaire is sufficient to dispel the need for a limitation while his observation of Holdeman's daily habits and interactions during the adjudication of his claim were not. As a result, the Court has no way to determine if the ALJ's analysis is supported by substantial evidence and the Court must resolve this ambiguity on remand. *See Brown,* 825 F.3d at 940 (remanding ALJ's decision because the ALJ's conclusory reasoning prevented the Court from determining if the decision was supported by substantial evidence).

### b. Persistence, Concentration, and Pace

Holdeman argues the RFC is not supported by substantial evidence because the ALJ found Holdeman had moderate limitations regarding concentrating, persisting, or maintaining pace, but failed to account for these limitations because the RFC only limits him to following simple instructions and performing simple, repetitive tasks. Tr. 979.

The ALJ's decision not to include additional limitations into the RFC due to Holdeman's moderate limitations in persistence or concentration is supported by substantial evidence. When explaining why Holdeman is moderately limited in his ability to maintain concertation, persistence, or pace, the ALJ pointed out that Holdeman: manages his own personal care, watches television, prepares simple meals, drives, shops, pays bills, fishes, and hunts twice a year. Tr. 978. The ALJ also noted that Holdeman displayed adequate ability to pay attention and concentrate

during his administrative hearings. Tr. 978. This evidence shows greater limitations were not needed to account for limitations in concentration or persistence.

On the other hand, the record does not contain substantial evidence that Holdeman can maintain an adequate pace. None of the daily activities require Holdeman to act with urgency, in fact, the more elaborate tasks (fishing and hunting) are often enjoyed because of their relaxed pace. Furthermore, there is no evidence in the record that shows Holdeman is not limited in his ability to maintain adequate pace. As a result, the ALJ's determination that no pace limitation is needed in Holdeman's RFC is not supported by substantial evidence and on remand, the ALJ's RFC must incorporate a limitation to account for Holdeman's inability to maintain adequate pace.

### 3. Whether the ALJ Improperly Relied on his own Medical Expertise When Determining the RFC

#### a. Entire RFC

An ALJ's assessment of a claimant's RFC must be supported by some medical evidence of the claimant's ability to function in the workplace. *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017). And The ALJ is required "to consider at least some supporting evidence from a professional." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).

Holdeman argues that the RFC is not supported by substantial evidence because the ALJ "rejected all of the opinion[s] of record and estimated what he felt Holdeman could do." Doc. 13, at 24, 28. Even if that statement were true, the Eighth Circuit has made clear that there "is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932; *see also Stringer v. Berryhill*, 700 F. App'x 566, 567 (8th Cir. 2017) ("While there were no medical opinions, it appears the medical evidence would have supported even a less restrictive RFC"); *cf. Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019) ("We do not require that every aspect of an RFC finding 'be supported by a specific medical opinion,' only that

it 'be supported by some medical evidence of the claimant's ability to function in the workplace.'"). And the Eighth Circuit has repeatedly upheld RFC determinations that were not directly supported by an explicit medical opinion. *See Myers v. Colvin,* 721 F.3d 521, 525-26 (8th Cir. 2013) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012) (same).

Holdeman cites to *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017), but *Combs* does not change the equation. *Combs* states, "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017). But requiring medical evidence, which would include medical records as well as medical opinions, is not the same as requiring the ALJ to give one opinion strong or controlling weight.

The ALJ analyzed the medical opinions, treatment notes, test results, objective imaging, workers' compensation filings, Holdeman's daily activities, and Holdeman's behavior during the hearing. Tr. 979-87. He was not required to seek out more medical opinions until he found one he could give strong or controlling weight.

### b. Handling

The ALJ determined that Holdeman "could frequently, but not continuously handle and finger bilaterally. He should not power grip or twist bilaterally." Tr. 979. Holdeman argues this portion of the RFC is not supported by substantial evidence because there is no medical evidence in the record that establishes that Holdeman is capable of frequent handling and fingering. The Commissioner argues that medical evidence is not required because the ALJ simply credited Holdeman's allegations that he had difficulties using his hands.

However, the Commissioner did not fully credit Holdeman's allegations. Holdeman alleged that he: has rheumatoid arthritis, Tr. 241; will drop dishes due to lack of strength and cannot put his own boots on, Tr. 69; cannot button buttons or zip zippers, Tr. 76; has difficulty holding small objects because his fingers lock up, Tr. 980; has severe pain in his wrists that limit his ability to use his hands, Tr. 65, and cannot use his fingers for more than a few minutes before they lock up. Tr. 1009. Nonetheless, the ALJ's RFC assumed Holdeman was capable of handling and fingering frequently—defined as "activity or condition [that] exists from 1/3 to 2/3 of the time[8]—but not continuously, as long as no power was involved. At the hearing, Holdeman explicitly stated he could not comply with the RFC due to the limitations with his hands. Tr. 1009. Thus, the ALJ did not fully credit Holdeman's subjective complaints; rather, he gave the allegations only partial credit by precluding Holdeman from power gripping or twisting but still concluding that he could work with his hands frequently. The ALJ was consequently required to support his decision to only give Holdeman's allegation's partial credit with medical evidence. *Combs*, 878 F.3d at 647.

However, the ALJ's only justification for deciding Holdeman could work with his hands was his opinion that he "he has had little continuing treatment . . . for hand pain". Tr. 981. And the ALJ cited to no medical evidence that either supports or detracts from his conclusion that Holdeman is capable of fingering and handling.

On remand, the ALJ needs to further develop the record to establish substantial evidence regarding whether Holdeman can frequently handle and finger. He must update the RFC accordingly.

---

[8] *See Owens v. Colvin*, 727 F.3d 850, 851 (8th Cir. 2013).

### c. Lupus

Holdeman argues that the ALJ violated his duty to develop the record because he found Holdeman's lupus to be severe but garnered no medical records or opinions about the effect Holdeman's lupus had on his ability to work.

It is the ALJ's duty to develop the record to ensure that there is substantial evidence to support the ALJ's determination of critical issues. *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010). And the ALJ's determination of the RFC must be supported by some medical evidence. *Combs*, 878 F.3d at 646. The impact Holdeman's lupus had on Holdeman's ability to work is critical to the determination of Holdeman's RFC. Holdeman alleges his lupus caused him to be fatigued, take naps, and vomit throughout the day when encountering a bad smell or when eating or drinking. Tr. 70-71, 74.[9] If such subjective complaints are true, they could warrant limitations in Holdeman's RFC.

The ALJ has failed to adequately develop the record. The record confirms Holdeman's claim that Holdeman has lupus. *See, e.g.* Tr. 741 (documentation of Holdeman's lupus diagnosis). However, there is no medical records or opinions in the record regarding the impact Holdeman's lupus has on his ability to work. As a result, the Court cannot resolve the critical issue of the impact Holdeman's lupus had on his RFC. Furthermore, the ALJ's opinion must be supported by some medical evidence, but there is none here.

The Commissioner argues that the decision not to include additional limitations to account for Holdeman's lupus is supported by substantial evidence because the ALJ acknowledged that Holdeman had lupus and said the RFC takes Holdeman's lupus into account. But merely acknowledging that a claimant has an impairment is not enough. The ALJ was not allowed to

---

[9] Holdeman alleges that he lost 45 pounds from vomiting.

decide how Holdeman's lupus impacted his ability to work without the support of medical evidence. Additionally, the Commissioner argues that the underdevelopment of the record has not prejudiced Holdeman. However, the underdevelopment of the record has prejudiced Holdeman because if the record were more fully developed the ALJ could be required to add additional limitations into the RFC to account for Holdeman's lupus and those additional limitations would lead to a finding that Holdeman is disabled.

On remand, the ALJ must develop the record to determine how Holdeman's lupus impacted his ability to work. He must then either adopt additional limitations to account for Holdeman's lupus or explain why the record shows these limitations are not needed.

### B  Whether the Commissioner Failed to Sustain His Burden of Showing that Holdeman was Capable of Other Kinds of Work at Step Five

Holdeman argues that the VE's testimony conflicted with the DOT regulations and the ALJ failed to resolve this conflict as required by SSR 00-4p. As stated above, there are multiple problems with the ALJ's RFC that must be fixed on remand. Because the RFC is very likely to change on remand, the Court will not determine if the jobs listed by the VE are consistent with the current RFC. On remand, the ALJ must ensure that any jobs proposed by the VE at step five are consistent with the RFC and DOT regulations.

### C  Whether There was Manifest Injustice

Holdeman also asks this Court to review the ALJ decision for "Manifest injustice," citing *Terry v. Barnhart*, 82 F. App'x 499, 500 (8th Cir. 2003). But "manifest injustice" in *Terry* refers to the ability of the Eighth Circuit to address issues not addressed by a district court. The doctrine is not applicable to this Court's review.

### D  Whether Benefits Must be Awarded on Remand

Holdeman argues that on remand the ALJ should be required to grant Holdeman benefits because he has twice sustained his burden through step four of the five step process.  A Court should remand with an instruction to grant benefits when the record "overwhelmingly supports" a finding of disability.  *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009).  This is the case when "further hearings would merely delay the receipt of benefits."  *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir.1984).  This burden is not met on the current record.

There are multiple errors in the ALJ's opinion: (1) the ALJ did not explain why it did not incorporate the findings from Dreiling's opinion; (2) the ALJ incorrectly weighed Dr. Koprivica's opinion; (3) the ALJ did not account for limitations in Dr. Smith's opinion without explanation; (4) the ALJ failed to explain why a limitation regarding Holdeman's interaction with supervisors was not needed; (5) the ALJ's decision not to adopt a pace limitation was not supported by substantial evidence; (6) the ALJ failed to develop the record to address the impact of Holdeman's Lupus on his ability to work; and (7) the ALJ failed to develop the record to address the impact of Holdeman's Lupus on his ability to work.

However, except for adding a pace limitation, the remainder of these errors could end up having an insignificant impact on the RFC.  Holdeman has shown that the record is insufficiently developed in multiple key areas and that multiple of the ALJ's has failed to support his decisions with substantial evidence.  Holdeman has not shown that there is overwhelming evidence that the ALJ's conclusions were wrong.  Consequently, the Court cannot say, without further development of the record, whether there is overwhelming evidence that Holdeman is disabled.  And remand for an award of benefits is not appropriate at this point.

## IV.    CONCLUSION

For the reasons discussed above, the ALJ's decision is REMANDED.  On remand the ALJ must: (1) adopt Dreiling's findings or explain why they are being rejected; (2) reassess the weight given to Dr. Koprivica's opinion; (3) adopt the limitations in Dr. Smith's opinion or explain why those limitations are not being included; (4) explain why Holdeman is capable of interacting with supervisors without limitations; (5) adopt a pace limitation; (6) further develop the record to determine if Holdeman is capable of frequent fingering and handling; and (7) further develop the record to establish the impact of Holdeman's lupus on his ability to work.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  December 22, 2021
Jefferson City, Missouri